Good morning, Your Honor. Good morning. Mikhail Abbey and Mary Moisik of Sherman and Sterling for Petitioner Bokda Marhajan. Is it Marhajan? Marhajan, yes, Your Honor. Okay. Am I correct, this thing has previously gone back to the BIA twice? That's correct, Your Honor. Okay, so we're seeking a third remand. This is the third remand, Your Honor. All right, okay. I'd like to reserve a few minutes for rebuttal. This case is about stopping the improper deportation of a democracy activist to Nepal, where he would likely be killed because of his political beliefs. The BIA erred in determining that he did not have a well-founded fear of persecution and that he did not establish past persecution. Let me ask you this. I'm not saying that I think this, but let's say that the panel didn't think that there was past persecution. Does he just then lose? Do you have to convince us that the past persecution was wrong? He does not lose if the panel determines that he did not suffer past persecution because he still has a well-founded fear of future persecution if returned to Nepal. But it's a lot harder at that point. He just wouldn't have the rebuttable presumption, which would be established by showing that he had past persecution. But the facts of the record speak for themselves in terms of his well-founded fear of future persecution. The record shows that the Maoists target NCP members. Mr. Marajan has been an NCP member since 1989. Let's focus on the fact that I think we're stuck with the fact that he's basically found credible. Correct, Your Honor. And so that being said, give me your best facts for past persecution. The best facts for past persecution are Mr. Marajan joined the NCP in 1989. During the 1999 election campaign, he began receiving death threats from the Maoists on account of his membership in the NCP. He received weekly death threats both telephonically and in person while on the street. This continued for a year and a half. On October 13, 2001, he was conferring with a colleague of his from the NCP, and they were both shot at. His colleague was killed by the Maoists. Mr. Marajan took him to the hospital where he died. Days later, the Maoists came to Mr. Marajan's restaurant and told him that he had been lucky to have survived the shooting, unlike his colleague, and that he had to quit the NCP and pay them a fine or a tax because of his NCP membership. So we have to accept that at this point because of that he's basically found to be generally credible. Correct, Your Honor. It would seem that before you had all these remands that there was an argument that he failed to mention. You know, I mean, I think just when the shooting that, you know, just because they miss him doesn't – I mean, that's still – I'd be pretty upset about that. You know, I'd be glad I lived, but I'd still be pretty upset that someone shot at me. But in the original, he didn't – he failed to mention that before the immigration judge that the guerrillas sprayed his restaurants with bullets when his wife tried to reopen the restaurant after his departure, right? He left that out initially. Correct, Your Honor. But now that's all gone because he's credible, that the BIA didn't – That was corrected by the BIA. The immigration judge originally found that he wasn't credible. The BIA reversed that decision. And I think just on a factual matter, that had a lot to do with the translation problems at the immigration – during the immigration court hearing. And just to add to the facts of past – But the board has ruled on that, right? That was the purpose of – I can't remember whether it was the first or the second remand. This was the first appeal. Yes, Your Honor. And so they looked at the transcript and they essentially said, Okay, we've examined it, but we don't really think that any of the difficulties make it impossible for either the immigration judge or for us to review the record here. Correct. The board has ruled on that issue. Okay. However, that's a de novo review because that's a due process issue. Is it on the third round of – I mean, when does law of the case attach here? You then appealed again and there was a second remand, but the board essentially readopted, I guess, did they not, their prior ruling? Correct, Your Honor. And just to clarify, the two remands – the first remand was a joint motion between us and the government. No, I understand that. I'm just trying to figure out what has been conclusively established and what remains for us to review. Is it your position that everything is open going clear back to the first round of appeals? Our position is that the issues for this court would be whether he established past persecution, whether he has shown that he has a well-founded fear of future persecution, and the element that the BIA has pointed to is whether the acts have risen to the level of persecution. But the translation part of it, they went back, they looked at it, and they said, okay, there are some problems here, but it didn't affect – they were not really that relevant and it didn't really matter, so there's enough here. So can we put that behind us? We believe that the issue is moot in that if this court were to find that he has established past persecution or that he has a well-founded fear of future persecution, the translation problem would be moot. However, looking at the record, there are – Wait a second, counsel. That's not the same. That can't be right. I think you have to take the position that the record either is or is not adequate for our review in order to grant you the relief that you're asking us to grant. Do you not? Yes. Okay. And you're urging, based on the summary of the evidence that you just gave, that we can glean all that from the transcript. Correct. Correct, Your Honor. You want us essentially to apply, I guess, the substantial evidence standard, which is the task, to determine that the BIA erred in not finding past persecution. Correct, Your Honor. We would say that this can be gleaned from this application and the transcript, and we would ask for the de novo standard with regards to past persecution. Now, why would we review it? We're not the Board of Immigration Appeals. If all we can do is review for substantial evidence their decision, if we don't think there's substantial evidence to support it, then we have to send it back to them again, do we not? Well, Your Honor, we would say that for the past persecution issue, the question for the court is whether these facts constitute past persecution. It's not a factual determination. It's whether if you have attempted murder. Then what do we need the BIA for? The BIA made their determination, and now this court can review that de novo. Well, you're saying that assuming everything that it gets the benefit of being true, being credible, that based on those, as a matter of law, those facts would amount to past persecution. Correct, Your Honor. But then it would go back, and the BIA would then look at it again, saying, okay, there's past persecution. Now you have to look through the lens again as to whether they're on the likelihood of future persecution, and wouldn't the record, there could be things that have changed. It may be different now. Correct, Your Honor. There's the issue of changed circumstances. That was never raised below by the government, the BIA. Well, and his fears, you know, what his fears are, it's like six years since we started this, right? Correct, Your Honor. It has been some time since that happened. However, if this court were to determine that he did establish past persecution, he would have a rebuttable presumption of future persecution. Well, so they would have to look at it through a different lens. I would say yes and no, Your Honor, because the government then has the burden of showing a number of things, and they never brought up those issues below. So when this goes back to the BIA, we would like a ruling that says that he has established past persecution, he has the presumption of future persecution, and he should be entitled to asylum. And then we just tell the Supreme Court in INS v. Ventura, thanks for your advisory opinion, but we choose not to follow it this week? I wouldn't say that, Your Honor. No, I wouldn't either. I mean, we can't do what you're just asking us to do. You want us to direct the BIA to grant this man asylum. And the Supreme Court told us in that Venturi or Ventura case that we don't have the authority to do that. All we can do is agree with you, board erred, past persecution, send it back, and then they have to decide, as I understand the law, correct me if I'm wrong, counsel, but as I understand the law at that point, they have to decide whether they need to send it back to the immigration judge to reopen the record so that the government can now put in evidence of whether country conditions have changed or maybe the board could decide on the basis of the record before it and rule on that issue. But we can't do that, can we? I agree with the court, Your Honor. Okay. You're just tired of going back. You're tired of getting the same answer every time you go back. But Ventura says you've got to go back. Or you could lose here, too. We think that the facts in this case are definitely... Have there any cases that Ninth Circuit precedent that since the six-year sojourn that have strengthened your position? Well, I think the strongest case in our favor is the Smolkiova case, Smolkiova v. Gonzalez, which is a 2005 Ninth Circuit case. And in that case, the court said that an attempted murder alone rose to the level of past persecution. The court also said that killing of a similarly situated individual, along with credible death threats, rose to the level of past persecution. And we have both of those here. Similarly, the Ruano v. Ashcroft case, which is a 2002 Ninth Circuit case, the court said that being pursued by armed men and the killing of similarly situated individuals by these armed men amounts to and compels a finding of past persecution. And we have that in this case. So I believe that the law is on our side, Your Honor. I see my time is up. Your time has expired. I'll give you a little time on rebuttal. Thank you, Your Honor. Thank you. We'll hear from the government. Good morning, Your Honors. Rosanna Perry on behalf of the Attorney General. Jumping right to the facts here, the one that bothers me the most on the past persecution is what he's characterizing as the attempted murder. And, you know, if we have to presume him to be true, since what he's saying is true because he was credible, that you've got that he's sprayed in, his friend gets killed. Now, the argument could be made that he just happened to be, you know, he just happened to be where there was a drive-by. But there's also testimony in there that people came back after and said, hey, you better watch out or the same thing's going to happen to you as happened to your friend, right? Right. So why isn't that enough? Well, it's possible to have two different views of the circumstances of the facts. But the Board has decided after comparing his case with cases like Smolny-Okova, I'm sorry, I'm probably saying that wrong, that his the instances or the events that occurred did not rise to the level of persecution. I'm not sure if I. Well, you know, I'm still concerned with someone getting killed right next to me and then there is evidence that it could have happened year next and there's evidence of a nexus to some protected views. I don't know how that can't be enough. I'm not sure that the Board definitively decided that what happened to him occurred on account of his political opinion, if that's what you're saying. They said it could have happened. But at this point we have to presume him credible. So. Right. But the Board has decided, comparing his case to other cases with similarly situated people, that it did not rise to the level of persecution. Well, see, a lot of the arguments that you're making, until credibility was taken off the table, I see where you're going. And because I don't think he gave a good explanation about coming back to the wife's restaurant and all of those things, but the Board took that off the table for us. They didn't uphold, you know, the lack of credibility. And so now we have to presume credible and. Well, I believe that the Board, they've considered this case twice, the past persecution element of this case twice. And. Well, and they seem stuck, stuck in a mindset too. Well, in the last decision, the government would submit that they considered the case in full and decided that he did not suffer persecution. Why was there a joint? What was the reason for the joint remand the first time? The translation issue. Okay. And what about the second time it wasn't a joint remand? I believe it was. I actually don't know if it was. I thought they were both joint remands. I believe they were. So what was the reason the second time then? For a fuller explanation of the past persecution analysis. They wanted to fully develop the past persecution. Well, I know this isn't going to inform me at the end of the day, but it sort of seems like the government might have thought that there was some problems there and to give them another shot at it. Your Honor, I can't. I cannot. You were not the lawyer on the joint remand the second time? No, I wasn't, Your Honor. Okay. I wanted to address Petitioner's Counsel's statement that regardless of whether or not the petitioner showed past persecution, there's a rebuttable presumption. That's not true. It's not true? No. You have to show past persecution to have a rebuttable presumption of a well-founded fear. Yeah. But he was saying that he didn't have to show past persecution to get the rebuttable presumption. Oh, no. No, he didn't say that. I understood his argument to be just that. Okay. I think he might have misunderstood. Yeah. I think he might have misunderstood. I think what he said, and I'm not sure I agree with him, he said even if we do not find past persecution, he believes that the record that, you know, that it's sufficient here to show he had a fear, even without the rebuttable presumption, that the record is adequate for him to prevail. I misunderstood. Sorry. The government would submit that substantial evidence supports the Board's decision that this petitioner did not suffer past persecution in Nepal or that he has a well-founded fear of future persecution. The record shows that there's general civil strife in Nepal and it's been ongoing and he's not facing anything different than anyone else in Nepal at the time. The record shows that Maoist insurgents are going after everyone. They're attempting to extort everyone. So we would submit that he does not have a well-founded fear of future persecution. When did he report this to the police and what did they say? He, according to the record, he did report this incident to the police and they said they couldn't help him. But the record shows that the police, I mean, and the courts have tried Maoist insurgents. I have to deal with this record. So what does this record say? That's what's in the record. The police say they are not in a position to help him? He says that the police weren't in a position to help him. But if we have to assume that he's credible, then? Right. And there's evidence in the record that shows that Maoist insurgents have been arrested, have been tried. That's also part of the record. If there are no further questions. Thank you very much, counsel. I think that's it. I just wanted to add that the record does not compel the conclusion that this petitioner has suffered past persecution or well-founded fear. And the government requests that the petition for review be denied. Thank you very much. Okay. Counsel, I'll give you a minute. I'd like to make two points, Your Honor. First, just to clarify, the second joint remand was to reconsider the issue of past persecution and it was instigated by the government. We signed on to it. And then at the BIA, we filed a joint brief to reconsider the issue of past persecution. And the board still came to the same conclusion? Correct, Your Honor. Well, so did the government think that that was wrong? What did they say in their brief? The government never conceded that there was past persecution, but they thought the issue needed to be reconsidered, with the only other outcome being that there would be past persecution. I have to say, I don't know how many immigration cases that I've handled in ten and a half years in this job. I've never had one where the government twice agreed to the remand and then filed a joint brief. This is a very unusual case. I agree, Your Honor. The second point I wanted to clarify, just the issue about whether we needed to have a finding of past persecution to meet our burden of a well-founded fear of future persecution. This Court in Case Lem v. INS from 2000 found that the petitioner didn't show past persecution. He was pursued by armed men, but he never had any encounters with them. However, he had a reasonable fear of future persecution. So they found that he had that reasonable fear without the past persecution. So I believe that that is a possible outcome in this case as well, Your Honor. Well, it's humanly possible, but it's harder for you without the rebuttable presumption. We would prefer the rebuttable presumption, of course, Your Honor. Well, I do want to thank you both for taking the case. The Court very much appreciates the willingness of ABLE Counsel to take these cases on a pro bono basis. Thank you. Thank you, Your Honor. Very well. The case that's argued is submitted. I believe that completes our calendar for the week. All the other cases are submitted. Everything else is submitted. So we are adjourned. Thank you. Thank you.
judges: Conlon, Tallman, Callahan